

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHERRY CHIN,<br><br>                              Plaintiff,<br><br>v.<br><br>SMALL BUSINESS<br>ADMINISTRATION OF THE UNITED<br>STATES OF AMERICA, et al.,<br><br>                              Defendants. | Case No.:  24-CV-732 JLS (AHG)<br><br>**ORDER GRANTING DEFENDANTS'<br>MOTION TO DISMISS**<br><br>(ECF No. 8) |

Presently before the Court is Defendants United States Small Business Administration ("SBA"), Tammie Polk, and Zachary Bradford's (collectively, "Defendants") Motion to Dismiss Plaintiff's Complaint ("Mot.," ECF No. 8).[1] Plaintiff Sherry Chin filed an Opposition to Defendants' Motion ("Opp'n," ECF No. 11), to which Defendants filed a Reply ("Reply," ECF No. 13).  Having carefully reviewed Plaintiff's Complaint ("Compl.," ECF No. 1), the Parties' arguments, and the law, the Court **GRANTS** Defendants' Motion.

/ / /

---

[1] All citations refer to the blue page numbers affixed to the top right corner of each page in the Court's CM/ECF system.

1

## BACKGROUND

2       Plaintiff Sherry Chin is a former employee of Defendant SBA.  Compl. ¶ 16.  SBA

3 "rehired" Chin on November 4, 2022, to work in San Diego, California as a Loan Specialist

4 in the Processing Disbursement Center ("PDC").  *Id.* ¶ 12.  In the PDC, Chin worked under

5 the supervision of Micky Mahaney and "had become accustomed to working 60 hours a

6 week," entitling her to overtime pay.  *Id.* ¶¶ 15.a, 15.d.  Though Chin "received the highest

7 score possible and never was disciplined" while working in the PDC, she was informed on

8 March 9, 2023, that some PDC employees "would be transferred to another department

9 due to insufficient work."  *Id.* ¶¶ 13, 15.a.

10       The next day, Chin was informed that she was chosen for transfer to the COVID-19

11 Economic Injury Disaster Loan Servicing Center ("CESC").  *Id.* ¶ 15.b.  At first, Chin

12 welcomed the transfer and believed that her new role "would be no different than the

13 previous ones."  *Id.*  But within days, Chin learned that she would be reassigned as a Call

14 Center Representative, a role she believed to be an entry level position for which she was

15 overqualified.  *Id.* ¶ 15.f.  Chin also learned that, in the CESC, she would be limited to

16 working forty hours each week, effectively reducing her pay by more than a third.  *Id.*

17 ¶ 15.d.  Upon these realizations, Chin's anxiety, from which she suffers, "began to

18 worsen."  *Id.* ¶ 15.e.

19       For the next two weeks, Chin made several attempts to reclaim her role as a Loan

20 Servicer to no avail.  Upon learning of her specific assignment on March 17, 2023, Chin

21 emailed Defendant Tammie Polk, who worked as the Lead Loan Specialist, to explain that

22 "her high-performance evaluations at PDC evidenced her skillset and proved her training

23 would be wasted in the entry level Call Center Representative position."  *Id.* ¶ 15.f.  Polk,

24 however, could only assure Chin that "she would relay Chin's concerns to the appropriate

25 supervisor," further aggravating Chin's anxiety.  *Id.*  Eventually, Polk notified Chin that

26 she should contact her new manager, Cesar Rea.  *Id.* ¶ 15.g.

27       Believing that the Human Resources Department ("HR") would more readily

28 respond to her concerns than Rea, Chin contacted Elizabeth Cooper, a Human Resources

24-CV-732 JLS (AHG)

1   Officer.  *Id.*  Cooper told Chin that she should instead contact her new supervisors, Center

2   Director Tami Ralstin and Deputy Center Director Lisa Merker.  *Id.* ¶ 15.h.  Flummoxed

3   by the lack of a central point of contact who could address her concerns with the new

4   assignment, Chin's anxiety continued "to grow substantially."  *Id.*  Then, on March 22,

5   2023, Chin received word that Defendant Zachary Bradford, Senior Supervisory Loan

6   Specialist, had decided that Chin would remain with the customer service team.  *Id.* ¶ 15.i.

7   Chin requested a meeting with HR, but received only a response from Bradford stating that

8   her position as a Call Center Representative was the only one available based on current

9   workloads.  *Id.* ¶¶ 15.i–15.j.

10      Her anxiety intensifying, Chin became unable to complete her work and sought

11  medical assistance on March 27, 2023.  *Id.* ¶¶ 15.j–15.k.  Chin was diagnosed with severe

12  anxiety, and her doctor recommended she take medical leave through June 5, 2023.  *Id.*

13  ¶ 15.k.  Acting on that recommendation, Chin submitted her doctor's note to Deputy

14  Supervisor Cynthia Garland and requested twelve weeks of leave under the Family and

15  Medical Leave Act ("FMLA").  *Id.*  Unexpectedly, Bradford called Chin two days later

16  placing her on unpaid status due to her "refusal" to work.  *Id.* ¶ 16.  Chin tried to explain

17  that she had continued to fulfill all her work obligations up until the FMLA request, but

18  Bradford did not relent.  *Id.*  Bradford explained that being placed on unpaid status was the

19  equivalent of being laid off and, though unclear from the face of the Complaint, Chin is

20  apparently no longer employed by SBA.  *Id.*

21      Chin pursued her grievances through two parallel administrative avenues, receiving

22  a right-to-sue letter from the California Civil Rights Department and, after having her

23  claims denied, receiving the option to sue in United States District Court from the Equal

24  Employment Opportunity Commission ("EEOC").  *Id.* ¶ 21.  She filed suit in this Court on

25  April 23, 2024, alleging thirteen causes of action, some under federal law and some under

26  California state law, as will be discussed in more detail below.  Defendants filed the instant

27  Motion on August 2, 2024, seeking dismissal of all claims.  *See* Mot.

28  / / /

24-CV-732 JLS (AHG)

1    **MOTION TO DISMISS**

2    **I.      Legal Standard**

3           *A.      Rule 12(b)(1)*

4           Federal courts are courts of limited jurisdiction and thus have an obligation to

5    dismiss claims for which they lack subject matter jurisdiction. *Demarest v. United States*,

6    718 F.2d 964, 965–66 (9th Cir. 1983).    The burden of establishing subject matter

7    jurisdiction is on the party asserting jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of*

8    *Am.*, 511 U.S. 375, 377 (1994).    When a party files a 12(b)(1) motion, "there is a

9    presumption of a lack of jurisdiction until the plaintiff affirmatively proves otherwise."

10   *Orient v. Linus Pauling Inst. of Sci. & Med.*, 936 F. Supp. 704, 706 (D. Ariz. 1996).

11          Under Federal Rule of Civil Procedure 12(b)(1), a party may raise by motion the

12   defense that the complaint lacks subject matter jurisdiction via a facial or factual attack.

13   *See White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000).    In a facial attack, such as the one

14   here, "the challenger asserts that the allegations contained in a complaint are insufficient

15   on their face to invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*,

16   373 F.3d 1035, 1039 (9th Cir. 2004).    A court resolves a facial attack as it would a Rule

17   12(b)(6) motion: "Accepting the plaintiff's allegations as true and drawing all reasonable

18   inferences in the plaintiff's favor, the court determines whether the allegations are

19   sufficient . . . to invoke the court's jurisdiction." *Leite v. Crane Co.*, 749 F.3d 1117, 1121

20   (9th Cir. 2014).

21          *B.      Rule 12(b)(6)*

22          Federal Rule of Civil Procedure 12(b)(6) permits a party to raise by motion the

23   defense that the complaint "fail[s] to state a claim upon which relief can be granted."    To

24   survive a 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as

25   true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662,

26   678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).    A claim is

27   facially plausible when the facts pled "allow[] the court to draw the reasonable inference

28   that the defendant is liable for the misconduct alleged." *Id*.    That is not to say that the claim

24-CV-732 JLS (AHG)

must be probable, but there must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* Facts "'merely consistent with' a defendant's liability" fall short of a plausible entitlement to relief. *Id.* (quoting *Twombly*, 550 U.S. at 557).

Though this plausibility standard "does not require 'detailed factual allegations,' . . . it [does] demand[] more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (quoting *Twombly*, 550 U.S. at 555). In other words, a complaint will not suffice "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (alteration in original) (quoting *Twombly*, 550 U.S. at 557). Put differently, "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

Review under Rule 12(b)(6) requires a context-specific analysis involving the Court's "judicial experience and common sense." *Iqbal*, 556 U.S. at 679. In performing that analysis, "a district court must accept as true all facts alleged in the complaint, and draw all reasonable inferences in favor of the plaintiff." *Wi-LAN Inc. v. LG Elecs., Inc.*, 382 F. Supp. 3d 1012, 1020 (S.D. Cal. 2019). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (second alternation in original). If a complaint does not survive Rule 12(b)(6), a court grants leave to amend unless it determines that no modified contention "consistent with the challenged pleading could . . . possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986).

## II.   Analysis

### A.   *Sovereign Immunity*

The Court first must consider Defendants' argument that the bulk of Chin's Complaint is barred by the doctrine of sovereign immunity. "Sovereign immunity is jurisdictional in nature," so, as a threshold matter, the Court first must determine whether Defendants' immunity has been waived. *See Fed. Deposit Ins. Co. v. Meyer*, 510 U.S. 471,

/ / /

1  475 (1994) (first citing *United States v. Sherwood*, 312 U.S. 584, 586 (1941); and then

2  citing *United States v. Mitchell*, 463 U.S. 206, 212 (1983)).

3          *1.     State-Based Claims*

4        As alluded to above, Chin asserts thirteen causes of action, nearly all of which are

5  pled under California state law.  Relevant here to Defendants' sovereign immunity

6  argument are Claims I–VII,[2] which allege violations of the California Fair Employment

7  and Housing Act ("FEHA"), codified as Government Code §§ 12900–12996; Claims

8  VIII–IX, which allege breach of contract, both express and implied-in-fact; and Claims

9  XI–XII, which allege wrongful termination and whistleblower retaliation, in violation of

10  FEHA and other California labor laws.  *See* Compl.  Of these claims, Chin brings just

11  Claim II against all named Defendants; the remainder are brought against only Defendant

12  SBA.[3]  *See id.*

13        Defendants argue Claims I–IX, and XI–XII are barred by sovereign immunity.  As

14  federal agencies and employees, Defendants contend they can only be sued in their official

15  capacity if Congress has expressly waived their immunity.[4]  Mot. at 14–15.  Here,

16  Defendants say, "Plaintiff can point to no congressional statute or authority that

17  unequivocally waives the sovereign immunity of the federal government from claims

18

19

20  [2] Respectively, Claims I–VII allege: (1) disability discrimination, (2) hostile work environment on account of disability, (3) retaliation, (4) failure to provide reasonable accommodation, (5) failure to engage in interactive process, (6) discrimination and retaliation for taking medical leave, and (7) interference with medical leave.  *See* Compl.

21

22

23  [3] On this point, the Complaint is somewhat contradictory, as certain of the claims are described as "Against Entity Defendant," yet contain allegations seemingly pertaining to the two other named Defendants Polk and Bradford.  The Court need not resolve this ambiguity, however, based on its resolution of the instant Motion.

24

25

26  [4] Chin does not expressly bring her suit against Polk or Bradford in their official capacity, but the Court construes the Complaint as such.  As an initial matter, Chin does not address, let alone dispute, Defendants' characterization of her claims as against Polk or Bradford in their official capacity.  Second, Chin implicitly concedes that Polk and Bradford were acting in their official capacity in her argument related to her FTCA claims.  *See* Opp'n at 17–18.  If Chin intends to sue any Defendants in their individual capacity, she must so clearly state in an amended complaint.

27

28

24-CV-732 JLS (AHG)

1    under" FEHA, California contract law, California labor law or other violations of

2    California statutory law. *Id.* at 16. Without a waiver of sovereign immunity, Defendants

3    submit the Court lacks subject matter jurisdiction over these claims. *Id.*

4        Chin declines to address this argument in her Opposition, or she at least declines to

5    address it with respect to the claims described above. In her Opposition, Chin merely

6    argues that her FMLA claims are not barred by sovereign immunity. Opp'n at 17.

7    Nowhere does she dispute the primary thrust of Defendants' sovereign immunity argument

8    that her *state law claims* are the ones that are barred. *See generally* Opp'n.

9        For the simple reason that Chin's Opposition is silent as to Defendants' sovereign

10    immunity argument with respect to Claims I–IX and XI–XII, the Court considers the issue

11    waived. *See Daniels v. Am.'s Wholesale Lender*, No. ED CV 11-1287 PA (MANx),

12    2011 WL 13225097, at *4 (C.D. Cal. Oct. 24, 2011) ("Plaintiffs fail to address (much less

13    refute) these persuasive arguments in their Opposition, thus conceding them." (citing *City

14    of Arcadia v. Env't Prot. Agency*, 265 F. Supp. 2d 1142, 1154 (N.D. Cal. 2003)));

15    *Arredondo v. Univ. of La Verne*, 618 F. Supp. 3d 937, 948 (C.D. Cal. 2022) ("The Court

16    thus accepts Defendant's argument as unopposed and bars Plaintiff's requests . . . .");

17    *Bolooki v. Honda Motor Co.*, No. 2:22-cv-04252-MCS-SK, 2023 WL 2627015, at *3

18    (C.D. Cal. Mar. 10, 2023) ("[T]he Court construes Plaintiffs' silence as concurring with

19    Defendant's position . . . ."). As a result, Claims I–IX and XI–XII are **DISMISSED** to the

20    extent they assert violations of California law.[5]

21        Moreover, to the extent they assert violations of California law, Claims I–IX and

22    XI–XII are futile as absolutely barred by sovereign immunity. When a party sues the

23    federal government, the law on which such action is based must contain an explicit waiver

24    of sovereign immunity for subject matter jurisdiction to exist, as "[i]t is axiomatic that the

25    United States may not be sued without its consent and that the existence of consent is a

26    _____

27    [5] Chin confusingly asserts Claims VI and VII simultaneously under both FEHA and FMLA, the latter of
which is rooted in federal law. To the extent these claims arise out of FMLA, they are unaffected by the
28    Court's disposition of Defendants' argument in this section and are addressed in more detail below.

24-CV-732 JLS (AHG)

prerequisite for jurisdiction." *Mitchell*, 463 U.S. at 212.  A waiver of sovereign immunity must be "'unequivocally expressed' in the text of a relevant statute[,]" and "'[a]ny ambiguities in the statutory language are to be construed in favor of immunity.'"  *Daniel v. Nat'l Park Serv.*, 891 F.3d 762, 768–69 (9th Cir. 2018) (emphasis omitted) (first quoting *United States v. Bormes*, 568 U.S. 6, 9–10 (2012); and then quoting *Fed. Aviation Admin. v. Cooper*, 566 U.S. 284, 290 (2012)).

"No party can enforce state law against the federal government without unambiguous congressional permission," and Chin points to no source of law withdrawing the federal government's immunity here.  *Jahn v. United States*, No. C08-0185RAJ, 2008 WL 2645475, at \*1 (W.D. Wash. July 1, 2008) (first citing *Goodyear Atomic Corp. v. Miller*, 486 U.S. 174, 180 (1988); and then citing *Mayo v. United States*, 319 U.S. 441, 445 (1943)).  "Although the United States has consented to suit for damages for specific torts committed by federal employees pursuant to the Federal Tort Claims Act ("FTCA"), it has not consented to suit under the provisions of state law cited by [Chin]."  *Rodney v. Dep't of Veterans Affs.*, No. CV 15-02984 DDP (AFM), 2016 WL 6637943, at \*4 (C.D. Cal. Sept. 28, 2016) (citing *Jachetta v. United States*, 653 F.3d 898, 903 (9th Cir. 2011)); *see also Galloway v. Mabus*, 2013 WL 435932, at \*7 (S.D. Cal. Feb. 4, 2013) (dismissing claims against Secretary of the Navy for violation of FEHA and California labor laws).  Chin's breach of contract claims follow suit in the same vein.  *Cf. MB Fin. Grp., Inc. v. U.S. Postal Serv.*, 545 F.3d 814, 819 (9th Cir. 2008) (recognizing a waiver of sovereign immunity under the FTCA only where the claim sounds in tort); *see also Head v. United States*, 830 F. App'x 915, 916 (9th Cir. 2020) (unpublished opinion) ("In addition, under 28 U.S.C. § 1346(a)(2), a district court lacks jurisdiction over a breach of contract claim against the United States, except in circumstances not alleged to be present here.").[6]

---

[6] The Court's conclusion applies equally to Polk and Bradford, who the Court determined above were sued in their official capacities as federal employees.  *See Gilbert v. DaGrossa*, 756 F.2d 1455, 1458 (9th Cir. 1985) ("It has long been the rule that the bar of sovereign immunity cannot be avoided by naming

1    Federal Rule of Civil Procedure 15(a) "provides that leave to amend should be freely

2    granted 'when justice so requires.'"  *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000)

3    (en banc) (citing Fed. R. Civ. P. 15(a)).  "Nevertheless, a district court need not grant leave

4    to amend where the amendment would unduly prejudice the opposing party, cause undue

5    delay, or be futile, or if the party seeking amendment has acted in bad faith."  *Nickles v.*

6    *United States*, 699 F. Supp. 3d 898, 925 (E.D. Cal. 2023) (citing *Leadsinger, Inc. v. BMG*

7    *Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008)).  Further, though the ordinary rule is that

8    "a case dismissed for lack of subject matter jurisdiction should be dismissed without

9    prejudice so that a plaintiff may reassert his claims in a competent court," where, as here,

10   the claims are absolutely barred by sovereign immunity, courts routinely dismiss said

11   claims with prejudice.  *See Frigard v. United States*, 862 F.2d 201, 204 (9th Cir. 1988)

12   (citing *Black v. Payne*, 591 F.2d 83, 86 (9th Cir. 1979)).  Accordingly, because Claims

13   I–IX and XI–XII are futile as absolutely barred by sovereign immunity, those Claims are

14   **DISMISSED WITH PREJUDICE** and **WITHOUT LEAVE TO AMEND**.

15              *2.    FMLA Claims*

16   Although the Court dismissed Claims VI and VII above to the extent they allege

17   violations of California state law, those two Claims simultaneously allege violations of the

18   FMLA.  Defendants argue that Chin fails to state a claim for violations of the FMLA

19   because of the absence of allegations suggesting that she was "an eligible employee"

20   entitled to FMLA protection.[7]  *See* Mot. at 17.  Supporting their argument is the dearth of

21   "facts about her employment history with SBA other than to claim she was 'rehired' by

22   SBA in November 2022—just four months before her final separation."  *Id.* at 18.

23   Chin responds by supplementing her Opposition with new facts—not alleged in her

24   Complaint—related to her SBA employment prior to the 2022 rehiring.  She represents that

---

26   officers and employees of the United States as defendants.  Thus, a suit against [federal] employees in
27   their official capacity is essentially a suit against the United States." (citations omitted)).

28   [7] Defendants appear to mistakenly reference Claims VII–VIII in their Motion, but it is apparent that this is a typographical error.

1   she "worked for Defendants from July 2020 until May 24, 2022," which, when taken in

2   conjunction with her post-rehiring employment, amounts to seven months of employment

3   with SBA within the twelve months preceding her March 2023 termination.  Opp'n at 16.

4   Coupled with the sixty-hour workweeks that she regularly undertook, Chin submits that

5   she "falls squarely within the definition of an employee under Title I," thereby entitling her

6   to the protections of the FMLA.  *Id.* at 17.

7          The FMLA entitles employees who encounter certain family or health events,

8   including "a serious health condition that makes the employee unable to perform the

9   functions of the position," to twelve weeks of leave in a yearlong period.  29 U.S.C.

10   § 2612(a)(1)(D).  Employees who take FMLA leave have the right to return to their

11   position or an equivalent position at the conclusion of their leave.  *Id.* § 2614(a)(1); *Xin Liu*

12   *v. Amway Corp.*, 347 F.3d 1125, 1132 (9th Cir. 2003).  Employers are prohibited from

13   interfering with an employee's exercise of these rights or discriminating against an

14   employee—including by discharging said employee—for exercising his or her FMLA

15   rights. 29 U.S.C. § 2615.  The FMLA gives certain eligible employees a private cause of

16   action and provides remedies for employer violations.  *Id.* § 2617.

17          Importantly, this private cause of action is available only for eligible employees

18   covered by Title I of the FMLA.  *See Russell v. U.S. Dep't of the Army*, 191 F.3d 1016,

19   1018 (9th Cir. 1999) ("While Title I and Title II employees under the FMLA are afforded

20   equivalent rights to leave time, Title I expressly provides a private right of action to remedy

21   employer action violating FMLA rights.  Title II contains no analogous provision."

22   (citations omitted)).  Though somewhat more nuanced in actuality, "Title II of the FMLA

23   governs leave for federal civil service employees with more than twelve months of service;

24   Title I governs leave for private employees and federal employees not covered by Title II."

25   *Id.* (first citing 5 U.S.C. § 6384 *et seq.* in reference to Title II; and then citing 29 U.S.C.

26   § 2601 *et seq.* in reference to Title I).

27          As above with the state-based claims, the absence of a private cause of action for

28   Title II employees implicates matters of sovereign immunity.  *See id.* at 1019

1   ("We . . . similarly conclude that the absence of an express waiver of the government's

2   sovereign immunity in Title II of the FMLA bars private suits for violations of its

3   provisions."). Thus, the Court only has jurisdiction over Chin's FMLA claims if she is an

4   eligible employee covered by Title I. To overcome Defendants' instant Motion, she must

5   "allege sufficient facts to support a reasonable inference" that the elements of her FMLA

6   claims are satisfied. *Craft v. Burris*, No. 16-166-BLG-TJC, 2017 WL 4891520, at *4

7   (D. Mont. Oct. 30, 2017).

8         The Court agrees with Defendants that Chin has not alleged facts to support the

9   reasonable inference that she is an "eligible employee" under Title I of the FMLA. To

10  state a claim under the FMLA, Chin must allege, among other elements, that "[s]he was

11  eligible for the FMLA's protections." *Lee v. Delta Air Lines Inc.*,

12  No. CV 20-8754-CBM-(JEMx), 2021 WL 4527955, at *10 (C.D. Cal. Aug. 23, 2021)

13  (quoting *Escriba v. Foster Poultry Farms, Inc.*, 743 F.3d 1236, 1243 (9th Cir. 2014)).

14  Chin's conclusory allegations that she "was entitled and requested a protected leave under

15  the . . . FMLA," Compl. ¶ 65, or that she had the "right to take protected leave under

16  the . . . FMLA," *id.* ¶ 79, are insufficient, *see Lee*, 2021 WL 4527955, at *10 (first citing

17  *Crane v. Chevron U.S.A. Inc.*, No. 1:19-cv-000805-DAD-JLT, 2020 WL 1046835, at *7

18  (E.D. Cal. Mar. 4, 2020); then citing *Craft*, 2017 WL 4891520, at *4; and then citing *Reyes*

19  *v. Fircrest Sch.*, No. C11-0778JLR, 2012 WL 5878243, at *2 (W.D. Wash. Nov. 21,

20  2012)). The bare allegation that Chin was "rehired" in November 2022 does not convey

21  enough detail for the Court to adequately assess the plausibility of her eligibility for a

22  private cause of action under Title I of the FMLA. Because Chin "does not allege any facts

23  from which the Court may reasonably infer that [s]he is an eligible employee," Claims

24  VI–VII, to the extent they allege FMLA violations, are **DISMISSED**. *See Craft*,

25  2017 WL 4891520, at *4.

26        Defendants urge the Court to grant Chin leave to amend with caution, noting that

27  Chin's representations related to her past employment history with SBA "would appear at

28  first blush to place Plaintiff directly within the ambit of Title II as defined above." Reply

1    at 6–7 (highlighting Chin's new representation that she worked for SBA for at least

2    twenty-seven months).  Defendants' insistence on caution is well taken, but they are also

3    correct that "[i]n determining the propriety of a Rule 12(b)(6) dismissal, a court *may not*

4    look beyond the complaint to a plaintiff's moving papers, such as a memorandum in

5    opposition to a defendant's motion to dismiss."  *Id.* at 6 (citing *Schneider v. Cal. Dep't of*

6    *Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998)).  Just as Chin may not rely upon the new

7    representations in her Opposition that are untethered to any allegations in her Complaint,

8    the Court likewise refrains from reading too much into those representations for purposes

9    of granting or denying leave to amend.  Accordingly, as the Court cannot definitively

10   conclude doing so would be futile, the Court will provide Chin with the opportunity to

11   amend her FMLA claims.[8]  *See Lopez*, 203 F.3d at 1130.

12       ***B.    FTCA Claims***

13       All that remain are Claims X and XIII, the former asserting SBA to be liable for

14   negligent hiring, supervision, and retention, and the latter asserting all Defendants to be

15   liable for intentional infliction of emotional distress.  Despite no mention of the FTCA in

16   the Complaint, Defendants construe these claims, both sounding in tort, as alleged under

17   the FTCA; the Court agrees as the United States would otherwise be immune from suit for

18   tort liability absent the FTCA's "limited waiver of this immunity."  *Bush v. Eagle-Picher*

19   *Indus., Inc.*, 927 F.2d 445, 447 (9th Cir. 1991).  Nevertheless, Defendants argue that the

20   claims remain fatally flawed because: (1) FTCA claims may be asserted only against "the

21   United States itself—not any federal agency or official," and (2) FTCA claims are

22   preempted by the Rehabilitation Act to the extent the claims are solely based upon

23   "allegations of disability-based discrimination."  Mot. at 18–19.

24       Chin does not address Defendants' first argument, focusing instead on their

25   preempt argument.  As to the preemption argument, Chin accuses Defendants of

---

26

27   [8] In her Opposition, Chin appears to push back on the proposition that she was required to exhaust
28   administrative remedies prior to asserting her FMLA claims.  *See* Opp'n at 21.  The Court does not
     understand Defendants' Motion to advance any such arguments.

1  misstating the relevant case law, suggesting they "seem to grasp onto a single line in [a

2  single case]." Opp'n at 18. She claims Defendants "do [not] cite to any case explicitly

3  stating the FTCA is 'preempted' by the Rehabilitation Act, other than a District Court

4  ruling, which has no binding authority or precedent effect." *Id.* Thus, according to Chin,

5  the instant Motion should be dismissed. *Id.* Ironically, nowhere does Chin cite a single

6  case supporting her own position. *See generally id.*

7         Because Chin fails to address Defendants' argument that she named as Defendants

8  parties not properly subject to an FTCA claim, the Court considers the issue waived. *See*

9  *Daniels*, 2011 WL 13225097, at *4. Accordingly, Claims X and XIII are **DISMISSED**.

10  In any event, Defendants are correct that the United States is the only proper defendant

11  against whom to assert an FTCA claim, so Chin's apparent concession is apt. *Fed. Deposit*

12  *Ins. Corp. v. Craft*, 157 F.3d 697, 706 (9th Cir. 1991) ("The FTCA is the exclusive remedy

13  for tortious conduct by the United States, and it only allows claims against the United

14  States. Although such claims can arise from the acts or omissions of United States

15  agencies, an agency itself cannot be sued under the FTCA." (citations omitted)); *Kennedy*

16  *v. U.S. Postal Serv.*, 145 F.3d 1077, 1078 (9th Cir. 1998) ("Because the United States is

17  the only proper party defendant in an FTCA action, the district court correctly dismissed

18  her complaint as improperly filed against the Postal Service and [the Postmaster

19  General].").

20         More complicated is the question of whether the Court should grant Chin leave to

21  amend her FTCA claims. Defendants answer this question in the negative, resorting back

22  to their preemption argument described above. Building upon that argument, and assuming

23  they are correct that Chin's FTCA claims are indeed preempted by the Rehabilitation Act,

24  Defendants contend that Chin's only viable path forward to pursue her

25  discrimination-based claims would be under the Rehabilitation Act.[9] But even if Chin were

26

27  ---

[9] Defendants suggest in their Motion that Chin should not be permitted "to pursue undefined claims against
28  Administrator Guzman," but as they themselves contemplate, Administrator Guzman would be the proper
defendant against whom to assert a Rehabilitation Act claim. *See* Reply at 7–8. To the extent Chin wishes

1  to pivot in that direction, Defendants argue that Chin still should not be permitted leave to

2  pursue her discrimination claims because she did not properly exhaust her administrative

3  remedies before doing so.[10]  Mot. at 22.

4        Chin counters with the rather tepid and conclusory proposition that "the

5  Rehabilitation Act is not the sole avenue of redress for [her] discrimination claims," but

6  she provides little color as to why she believes that to be the case.  Opp'n at 18.  Instead,

7  Chin focuses on Defendants' exhaustion argument, submitting that the exhaustion

8  requirement may be satisfied by merely "initiating contact with any agency official

9  logically connected with the EEO process, even if that official is not an EEO Counselor,

10  and by exhibiting an intent to begin the EEO process."  *Id.* at 19 (quoting 29 C.F.R.

11  § 1614.105).  Chin contends that the EEOC has long recognized this flexible interpretation

12  of the exhaustion requirement, and that she in fact satisfied the requirement when she

13  contacted Senior Supervisory Loan Specialist Bradford, Assistant Director of Workforce

14  Relations Tracy Evans, and Human Resources Manager Leslie Hopper regarding her

15  claims of discrimination.  *Id.* at 20.

16        As an initial matter, the Court agrees with Defendants that the Rehabilitation Act is

17  Chin's exclusive avenue of redress for her discrimination-related claims.  With few

18

19

20  to reconfigure her claims within the framework of the Rehabilitation Act, she may likewise amend her Complaint to add Administrator Isabel Guzman as a defendant.

21

22  [10] As Defendants correctly observe, the proper party defendant for a claim under the Rehabilitation Act is the head of the agency against whom the claim is asserted.  *See Cooper v. U.S. Postal Serv.*, 740 F.2d 714,

23  715–16 (9th Cir. 1984) ("[I]t clearly states that 'the head of the department, agency, or unit . . . shall be the defendant' in Title VII actions against the federal government."), *overruled on other grounds by Irwin*

24  *v. Dep't of Veterans Affs.*, 498 U.S. 89 (1990); *Mahoney v. U.S. Postal Serv.*, 884 F.2d 1194, 1196 n.1 (9th Cir. 1989) ("[T]he Rehabilitation Act simply makes available to victims of handicap discrimination

25  the rights and remedies embodied in Title VII.").  In their Motion, Defendants had argued that Chin would be unable to cure this defect because of the relation-back requirements of Federal Rule of Civil Procedure

26  15(c).  *See* Mot. at 21.  However, Defendants withdrew this argument in their Reply, recognizing that their interpretation of Rule 15(c) was superseded by a revision to the Rule.  *See* Reply at 8 n.4.  Accordingly,

27  the Court assumes for purposes of this Motion that amending the Complaint to name SBA Administrator Isabel Guzman as a defendant would cure an otherwise adequately pled Rehabilitation Act claim.

28

24-CV-732 JLS (AHG)

exceptions, Title VII and the Rehabilitation Act "provide[] the exclusive, pre-emptive remedy for federal employees seeking to redress employment discrimination." *Sommatino v. United States*, 255 F.3d 704, 711 (9th Cir. 2001).    Only if a plaintiff alleges "unconstitutional acts or . . . 'highly personal violation[s] beyond the meaning of "discrimination,"'" may she pursue an independent claim under the FTCA. *McCowen v. Dep't of Veterans Affs.*, No. 20cv2498-CAB-BLM, 2021 WL 764137, at *2 (S.D. Cal. Feb. 26, 2021) (quoting *Otto v. Heckler*, 781 F.2d 754, 757 (9th Cir. 1986)).    Contrary to Chin's suggestion that *Johnston v. Horne*—upon which Defendants rely—is an outlier, it is well-settled that a federal employee may only pursue a disability discrimination claim exclusively under the Rehabilitation Act for "conduct within the scope of [her employer's] duties."    *Sommatino*, 255 F.3d at 711 (citing *Otto*, 781 F.2d at 758); *see also Bukiri v. Lynch*, 648 F. App'x 729, 731 (9th Cir. 2016) (unpublished opinion) ("The Rehabilitation Act provides the exclusive remedy for federal employees alleging disability discrimination . . . ." (citing with approval *Johnston v. Horne*, 875 F.2d 1415, 1420 (9th Cir. 1989))).    Chin alleges no conduct approaching the rare situations falling outside the Rehabilitation Act's preemptive reach, so the Court must conclude that the FTCA is unavailable to her.

Thus, the Rehabilitation Act provides Chin's exclusive remedy for her discrimination claims, but on this point, the Court concludes that it is too early to deny leave to amend.    Under 42 U.S.C. § 2000e-16(b), Congress authorized the EEOC to issue "such rules, regulations, orders and instructions as it deems necessary and appropriate to carry out its responsibilities" under the Rehabilitation Act.    Acting pursuant to this authority, the EEOC promulgated a rule requiring "[a]n aggrieved person [to] initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action." 29 C.F.R. § 1614.105(a)(1).    Though a strict textual reading of this regulation might demand a claimant to contact an EEO "Counselor" within 45 days, the Ninth Circuit has previously deferred to the EEOC's "pragmatic interpretation" of the word "counselor"

1    as an "agency official logically connected with the EEO process." *Kraus v. Presidio Trust*

2    *Facilities Div./Residential Mgmt. Branch*, 572 F.3d 1039, 1045–46 (9th Cir. 2009)

3    (quoting EEOC Management Directive 110, at ch. 2, § I.A n.1).

4        In her Opposition, Chin claims that she satisfied her exhaustion obligation "by

5    reaching out to Assistant Director of Human Resources and Human Resources Manager

6    within hours after her termination." Reply at 20. Chin then argues that these non-EEO

7    personnel are "logically connected to the EEO process" such that they meet the definition

8    of "Counselor" under *Kraus*. *Id.* (citing *Duke v. Slater*, EEOC Decision No. 01A02129,

9    2000 WL 732027, at \*1 (E.E.O.C. May 22, 2000), holding that the Regional Director of

10    the Department of Transportation's Office of Civil Rights "qualified as initiating contact").

11    Defendants, on the other hand, respond that "Counselor" must at least be limited to "*EEO*

12    *personnel*," not mere supervisors or HR personnel. Reply at 8–9 (emphasis in original).

13        Tempted as the Court may be to reach these arguments now, it is premature to

14    undertake this analysis because Plaintiff has not sufficiently identified *in her Complaint*

15    which contacts with which agency personnel she believes satisfied her obligations under

16    *Kraus*.[11] As far as the Court can tell, Chin's lone allegation in her Complaint of initiating

17    contact with the EEOC is in Paragraph 21, where she alleges she "filed a complaint with

18    the [EEOC], which resulted in a denial of plaintiff's claims and provided plaintiff the

19    option to file a complaint in District Court as an available remedy." Compl. ¶ 21. This

20    allegation fails to sharply define in a non-conclusory fashion how Chin availed herself of

21    the informal EEOC dispute resolution process. Her argument in the Opposition supplying

22    additional facts not found in the Complaint will not be considered by the Court.[12] *See*

---

[11] Additionally, the Court need not address Defendants' argument that other unidentified allegations would be preempted by the Civil Service Reform Act ("CSRA"). *See* Mot. at 22–23. Chin does not challenge this assertion, nor does she suggest she is hiding other unidentified violations of federal law up her sleeve. The Court can address the issue of CSRA preemption if and when non-discrimination-based allegations crystallize at a later stage in these proceedings.

[12] The Court acknowledges Defendants' Request for Judicial Notice asking the Court to consider the Final Agency Dismissal of Chin's formal EEO complaint, dated February 14, 2024, noting Chin's initial contact

1  *Schneider*, 151 F.3d at 1197 n.1.  If Chin wishes to pursue a Rehabilitation Act claim on

2  amendment, she may do so only if she makes clear in her amended complaint when and

3  with whom she initiated contact with the EEOC dispute resolution process.  Plaintiff is

4  advised that she must also allege that she "exhibit[ed] an intent to start the EEO process,"

5  as mere complaints to supervisors of harassing conduct is insufficient under

6  § 1614.105(a)(1).  *See Kraus*, 572 F.3d at 1046 n.8 (distinguishing the case at issue from

7  *Johnson v. Henderson*, 314 F.3d 409 (9th Cir. 2002)).

8  ## CONCLUSION

9  In light of the foregoing, the Court **GRANTS** Defendants' Motion to Dismiss (ECF

10  No. 8).  To the extent they assert violations of California law, Claims I–IX and XI–XII are

11  **DISMISSED WITH PREJUDICE**.  Claims VI–VII, to the extent they assert violations

12  of the FMLA, are **DISMISSED WITHOUT PREJUDICE** and **WITH LEAVE TO**

13  **AMEND**.  And the Complaint's FTCA claims (Claims X and XIII) are **DISMISSED**

14  **WITH PREJUDICE**, but Plaintiff may amend her Complaint to comport her claims

15  within the relevant framework under the Rehabilitation Act as described above.

16  Within twenty-one (21) days of this Order, Plaintiff either **(1) SHALL FILE** an

17  amended complaint, or **(2) SHALL INDICATE** to the Court that she will not do so.

18  *Failure to timely select either of the above options may result in the dismissal of all*

19  *claims for failure to comply with a court order pursuant to Federal Rule of Civil*

20  *Procedure 41(b)*.  *See Applied Underwriters, Inc. v. Lichtenegger*, 913 F.3d 884, 890–91

21  (9th Cir. 2019) (explaining courts may dismiss an action under Rule 41(b) when a plaintiff

22  fails to comply with a court order requiring the filing of an amended complaint).  Any

23  amended complaint must be complete in and of itself without reference to Plaintiff's

24  original Complaint; claims not realleged in the amended complaint will be considered

---

26  with an EEO Counselor of October 18, 2023, more than the 45-day limitations period allows.  *See* ECF
27  No. 8-3 at 15.  Given the Court's resolution of the instant Motion, it need not wade into any of these
     documents that are external to the Complaint because even if it were to credit these documents for their
28  truth, it would not foreclose Chin from potentially curing the aforementioned defects in the Complaint
     with an amendment.  Accordingly, Defendants' Request for Judicial Notice is **DENIED** as **MOOT**.

1   waived.  *See* S.D. Cal. CivLR 15.1; *Lacey v. Maricopa County*, 693 F.3d 896, 928 (9th Cir.

2   2012) (noting claims dismissed with leave to amend that are not realleged in an amended

3   pleading may be "considered waived").

4        **IT IS SO ORDERED**

5   Dated:  January 10, 2025

6                                          Hon. Janis L. Sammartino
                                           United States District Judge
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

24-CV-732 JLS (AHG)